# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Ryan R. Corman, | ) |
| Plaintiff, | ) |
| | ) Case No. 3:14-cv-33 |
| vs. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Alex Schweitzer, NDSH Superintendent, | ) **AND ORDER** |
| Kerry Wicks, NDSH Secure Services | ) |
| 'Program Director,' now retired, Larry | ) |
| Culp, NDSH Secure Services Unit | ) |
| Coordinator, NDSH Clinical Team, From . . . | ) |
| Aug[. 30, 20]12 to . . . Jan[. 16, 20]15, | ) |
| inclusive, Dr. Ernster, NDSH Physician, | ) |
| Nurse 'Sheila,' NDSH Secure Services RN, | ) |
| and Randy Perkins, NDSH Secure Services | ) |
| Nurse Practitioner, | ) |
| Defendants. | ) |

Plaintiff Ryan R. Corman, who is proceeding in forma pauperis, filed a complaint alleging that defendants were deliberately indifferent to his serious medical needs in violation of 42 U.S.C. § 1983. (Doc. #8). The court reviewed the complaint under 28 U.S.C. § 1915(e)(2)[1] and determined that Corman stated a plausible claim for deliberate indifference to his serious medical needs, but that he had not sufficiently identified which defendants were personally involved in the purported deprivations. (Doc. #25). Corman was therefore given an opportunity to amend his complaint, and he has now filed an amended complaint. (Doc. #31). Corman also filed an "Addendum of Information." (Doc. #32). The court now conducts a review of the amended complaint, together with the "Addendum of Information," under § 1915(e)(2).

---

[1] Under 28 U.S.C. § 1915(e)(2), the court may sua sponte review an in forma pauperis complaint. If the court determines that the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief, the court must dismiss the complaint.

## Summary of Recommendation and Order

Corman cannot maintain a claim against the entire North Dakota State Hospital (NDSH) "Clinical Team" since it is not a person that is amenable to suit. All of the individual defendants are immune from a suit for monetary damages in their official capacities. Corman has failed to state a plausible claim against Nurse Sheila, since he has not alleged she was personally involved in the purported deprivations. This court therefore recommends that the claims against the "NDSH Clinical Team," against all defendants in their official capacities, and against Nurse Sheila be dismissed. The court also recommends that Corman's amended complaint, insofar as it seeks to recover property, be dismissed since he has not stated a plausible claim that would entitle him to that relief.

Corman has stated a plausible claim for deliberate indifference to his serious medical needs against Alex Schweitzer, Kerry Wicks, Larry Culp, Travis Bullock, Randy Switters, Randy Perkins, and Dr. Ernster in their personal capacities, and he should be allowed to proceed with that claim. The court will therefore order the Clerk to effect service as to those individuals. Lastly, Corman is not entitled to appointment of counsel, so his request for court-appointed counsel will be denied.

## Background

Corman contends that, in 2007, he was diagnosed with degenerative joint disease of the right hip by doctors at Altru Health System in Grand Forks, North Dakota. (Doc. #31, p. 6). He was advised that due to his age, he should not have hip replacement surgery at that time. Id.

In 2011, Corman experienced an increase in "pain and other symptoms" while incarcerated at the James River Correctional Center (JRCC). Id. Corman underwent physical therapy and examinations, and a JRCC doctor "determined" that Corman would need "surgery." Id.

On August 30, 2012, Corman was detained at the NDSH pending a hearing on the state's petition for his civil commitment pursuant to North Dakota Century Code chapter 25-03.3. Id. at 7. Corman alleges that from August 30, 2012, until April 7, 2014, NDSH staff "ignored [his] daily verbal and often written complaints of increasing pain and rapidly decreasing mobility . . . [and his] requests for medical treatment as determined [needed] by two (2) accurate and legitimate pre-existing diagnoses." Id. at 7-8. Corman states that he was "occasionally" referred to "medical," but that "no action [was] taken." Id. at 8.

Corman asserts that he initially reported his medical complaints to Travis Bullock and Randy Switters, members of the "Secure Services Clinical Team."[2] He alleges that those individuals "confined" him to "Secure One" for over five months "for the infraction of repeating a request for medical assistance." Id. at 4-5.

Corman states that he was examined by Nurse Practitioner Randy Perkins on "several occasions." Id. at 10. Corman alleges that Perkins prescribed naproxen[3] for pain management, which became ineffective, and recommended physical therapy, "which

---

[2] Corman named the "NDSH Clinical Team" as a defendant. Corman contends that since Travis Bullock and Randy Switters are members of that team, they are also named defendants, in both their individual and official capacities. (Doc. #31, pp. 5, 22-23). The court understands that "Secure Services" refers to NDSH units which house persons who have been civilly committed as sexually dangerous individuals.

[3] Naproxen is a nonsteroidal anti-inflammatory drug.

often didn't materialize." Id. at 10, 17, 20. Corman alleges that "[a]lternatives to [n]aproxen were not allowed." Id. at 20. Corman states that he never requested "opiate based painkillers," that his request for additional naproxen was denied, as was his request for surgery, and that the defendants never considered "[a]lternative pain management strategies." Id. at 21. Corman states that Perkins "claimed to have referred [him] to Dr. Ernster on many occasions," but may not have actually made those referrals. Id. at 10-11.

Corman contends that Dr. Ernster agreed with the previous diagnoses and "claimed to have referred [him] to specialists," but Corman states he does not know if Dr. Ernster actually made those referrals or if the requests were denied by the "Clinical Team." Id. at 11. Corman alleges that members of the "Clinical Team," including defendants Alex Schweitzer, Kerry Wicks, Larry Culp, Travis Bullock, and Randy Switters, had access to his medical history and were aware of his condition but denied him appropriate medical care. Id. at 5, 10-13. Corman states that he cannot identify other members of the "Clinical Team" because they "conceal their identities" from the civilly committed individuals. Id. at 14-15.

Corman has alleged no contact with defendant Nurse Sheila until after he underwent surgery on April 7, 2014. Id. at 13. Nurse Sheila oversaw Corman's post-operative recovery. Id. Corman states that Nurse Sheila was not part of the "Clinical Team" that allegedly denied him appropriate medical care for approximately nineteen months. Id. But, he states he has no way to know whether she participated in decisions to deny him medical care. Id. at 16.

Corman alleges that, because surgery was delayed, he was subjected to "unnecessary x-ray radiation," "substitution of [n]aproxen for actual treatment," pain, suffering, and mental anguish. Id. at 18-20. Corman also states that he was "publicly humiliated" because he had to attend medical appointments "strapped up like an animal." Id. at 20.

Corman seeks monetary damages against defendants in their official and individual capacities. Id. at 23. He also requests court-appointed counsel, "the recovery of property," and that the defendants be held accountable for their failure to properly treat his medical condition. Id.

## Law and Discussion

To state a cognizable claim that survives a § 1915(e)(2) review, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2), as interpreted by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), Ashcroft v. Iqbal, 556 U.S. 662 (2009), and their progeny. To meet the Twombly/Iqbal standard, a complaint must present a "plausible" claim and must give the defendants fair notice of the claim and grounds upon which it rests. E.g., Zink v. Lombardi, 783 F.3d 1089, 1098 (8th Cir. 2015). When the factual content of a complaint allows the court to reasonably infer that a defendant is liable for the alleged misconduct, the complaint has stated a facially plausible claim. Iqbal, 556 U.S. at 678. While facts alleged in the complaint are to be accepted as true, conclusory allegations of the elements of a cause of action are insufficient to state a claim that is plausible on its face. Id. In construing a pro se complaint, a court is to take a liberal approach and is to hold a pro se litigant to a less stringent pleading standard than would be required of attorneys. Erickson v. Pardus, 551 U.S. 89, 93 (2007).

1. **NDSH Clinical Team**

Corman's claim against the "NDSH Clinical Team" as a whole should be dismissed. At minimum, a complaint seeking relief under 42 U.S.C. § 1983 must allege: (1) a violation of a right secured by federal law; (2) that the alleged violation was committed by a person acting under color of state law; and (3) a sufficient causal link between the alleged violation and the basis upon which a defendant is alleged to be responsible. The "NDSH Clinical Team" is not a person amenable to suit under § 1983. See Harden v. Green, 27 F. App'x 173, 178 (4th Cir. 2001) (finding that the medical department of a prison is not a person that can be sued under § 1983); Gregory v. Simms, No. 6:15-54-TMC, 2015 WL 1218527, at *4 (D.S.C. Mar. 17, 2015) (finding that "staff" at a detention center, as a group, was not amenable to suit); Maldonado v. Facility 4A Bldg. 8 Staff, No. 1:12-cv-01630-DLB PC, 2013 WL 1414773, at *2 (E.D. Cal. Apr. 8, 2013) (holding that a group of unidentified defendants is not a person that can be sued under § 1983). Corman's claim against the "NDSH Clinical Team" should therefore be dismissed with prejudice.

2. **Official Capacity Claims**

Corman has named each of the individual defendants—all state employees—in their official capacities. A suit against a state employee in his or her official capacity is considered to be a suit against the state. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Under the Eleventh Amendment, states are immune from suits for damages in federal courts absent a waiver of that immunity. Id. at 66. The State of North Dakota has not waived its Eleventh Amendment immunity. See N.D. Cent. Code § 32-12.2-10. Corman is therefore barred from recovering monetary damages against the

defendants in their official capacities, so those claims should be dismissed with prejudice.

## 3. Personal Capacity Claims—Deliberate Indifference to Serious Medical Needs

A right to medical care while in custody awaiting civil commitment proceedings arises under the Due Process Clause of the Fourteenth Amendment, but is analyzed under the deliberate indifference standard of the Eighth Amendment. Scott v. Benson, 742 F.3d 335, 339 (8th Cir. 2014). To state a plausible claim of deliberate indifference to medical needs under the Eighth Amendment, a plaintiff must demonstrate two elements: (1) that his medical needs were "objectively serious," and (2) that officials "actually knew of but deliberately disregarded those needs." Allard v. Baldwin, 779 F.3d 768, 771 (8th Cir. 2015) (quoting Dulaney v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)).

One way a plaintiff can demonstrate that his medical needs were objectively serious is by providing "evidence that the medical condition was diagnosed by a physician as requiring treatment." Christian v. Wagner, 623 F.3d 608, 613 (8th Cir. 2010). Liberally construing Corman's amended complaint, he has alleged that he was diagnosed with degenerative joint disease of the right hip which required surgery. Therefore, Corman has sufficiently alleged that his medical condition was "objectively serious."

To demonstrate that a defendant actually knew of, but deliberately disregarded a serious medical need, "the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to an inmate's health." Thompson v. King, 730

7

F.3d 742, 746-47 (8th Cir. 2013) (quoting Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009)). The plaintiff must show "more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).

Corman asserts that he was denied other medical care options—specifically hip replacement surgery—after it was apparent that conservative treatment was no longer effective in treating his condition. "Delay in the provision of treatment or in providing examinations can violate [patients'] rights when the [patients'] ailments are medically serious or painful in nature." Johnson–El v. Schoemehl, 878 F.2d 1043, 1055 (8th Cir. 1989); see also Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995) (A delay in treatment, coupled with knowledge that a patient is suffering, can support a finding of an Eighth Amendment violation under § 1983.).

Corman contends that a doctor at JRCC diagnosed his condition as requiring surgery in 2012, but that he did not receive the surgery until April 7, 2014. In the interim, he states he was given only naproxen for pain management. Corman further alleges that the naproxen became ineffective, that the defendants never considered "[a]lternative pain management strategies," and that as a result he suffered pain, mental anguish, and decreased mobility. (Doc. #31, pp. 7-8, 18-20). Liberally construing the amended complaint, Corman's decreased mobility would have been obvious to the defendants.

In this court's opinion, the alleged nineteen-month delay in providing surgery, coupled with pain not ameliorated by medication, and Corman's obvious decreased

8

mobility supports a plausible claim that staff were deliberately indifferent to his serious medical needs. The court next considers whether Corman has sufficiently alleged personal involvement of any of the defendants.

### A. Alex Schweitzer, Kerry Wicks, and Larry Culp

Corman alleges that Alex Schweitzer, Kerry Wicks, and Larry Culp were aware of his medical needs, but that as part of the "Clinical Team," they denied requests—both from Corman and medical staff—that he be provided appropriate treatment. Corman has alleged sufficient personal involvement to proceed with his deliberate indifference to serious medical needs claim against Schweitzer, Wicks, and Culp in their personal capacities.

### B. Travis Bullock and Randy Switters

Corman names the "NDSH Clinical Team" as a defendant. Corman identifies two individuals on that "Clinical Team," other than Schweitzer, Wicks, and Culp, who were allegedly deliberately indifferent to his serious medical needs—Travis Bullock and Randy Switters. Corman asserts that Bullock and Switters "confined" him to "Secure One" for over five months "for the infraction of repeating a request for medical assistance."[4] Id. at 4-5. He also alleges that Bullock and Switters, as part of the "Clinical Team," were aware of his medical issues and denied him appropriate treatment, even when requested by medical staff. Corman has alleged sufficient personal involvement to

---

[4] Corman does not allege that he was denied due process before his confinement to "Secure One," and he does not specifically allege that Bullock and Switters retaliated against him for making requests for medical care. Rather, Corman's sole allegation is that there was no "medically appropriate response to [his] initial report of his need for surgery to address increasing pain and decreasing mobility, delivered verbally and supported by medical records going back over five (5) years . . . ." (Doc. #31, p. 4).

proceed with his deliberate indifference to serious medical needs claim against Bullock and Switters in their personal capacities.

### C. Randy Perkins

Liberally construing Corman's amended complaint, he alleges that Nurse Practitioner Randy Perkins was aware of his medical needs, that Perkins knew that naproxen was not effective to manage Corman's pain, and that Perkins failed to provide alternative treatment. Additionally, Corman alleges he does not know whether Perkins actually made referrals for Corman to see a physician, as Perkins had stated he would. Corman has alleged sufficient personal involvement to proceed with his deliberate indifference to serious medical needs claim against Perkins in his personal capacity.

### D. Dr. Ernster

Corman contends that Dr. Ernster agreed that Corman required surgery, and that Dr. Ernster told him that he had referred Corman to specialists. Corman states that he does not know whether Dr. Ernster actually made the referrals, or if the "Clinical Team" denied the referrals. Corman alleges he was not examined by specialists and did not undergo surgery for approximately nineteen months, during which time he experienced increased pain and decreased mobility. Because of the uncertainty about Dr. Ernster's actions, and Corman's ability to ascertain whether Dr. Ernster made referrals, Corman should be allowed to proceed with his deliberate indifference to serious medical needs claim against Dr. Ernster in his personal capacity.

### E. Nurse Sheila

Corman has alleged no facts suggesting that Nurse Sheila had any personal involvement with Corman's medical care prior to his hip replacement surgery. It is

therefore recommended that Corman's claim be dismissed without prejudice against Nurse Sheila.

4. **Request for Property**

In Corman's request for relief he includes "the recovery of property." Id. at 23. Corman does not identify the property he seeks or state any facts regarding a deprivation of any property. Under the standards of Twombly/Iqbal, the amended complaint does not give the defendants fair notice of the claim for "recovery of property" and the grounds upon which it rests. Corman's amended complaint, insofar as it requests "the recovery of property," should therefore be dismissed without prejudice.

5. **Request for Appointment of Counsel**

Corman requests appointment of counsel. Id. Indigent civil litigants have no statutory or constitutional right to court-appointed counsel, and the court has broad discretion in deciding whether to appoint counsel. Davis v. Scott, 94 F.3d 444, 447 (8th Cir. 1996). Several factors are relevant in determining whether an indigent civil litigant is provided court-appointed counsel, including "the factual complexity of the case, the ability of the indigent [litigant] to investigate the facts, the existence of conflicting testimony, the ability of the indigent [litigant] to present his claim and the complexity of the legal issues." Abdullah v. Gunter, 949 F.2d 1032, 1035 (8th Cir. 1991). In addition, the court should satisfy itself that the plaintiff has in good faith attempted to retain counsel and has been unsuccessful. Id.

The court has reviewed the record and, in its discretion, finds that appointment of counsel is not warranted. Corman's claim does not involve novel arguments or requests for extension of current laws, and he has demonstrated a threshold ability to

articulate his claim and the facts underlying his claim. After reviewing the factors identified by the Eighth Circuit Court of Appeals in <u>Abdullah</u>, the court finds appointment of counsel at this stage is not necessary. Accordingly, Corman's request for court-appointed counsel will be denied.

## Conclusion

Corman cannot maintain a claim against the "NDSH Clinical Team" because, as a group, it is not amenable to suit in § 1983 actions. Each of the individual defendants are immune from a suit for monetary damages in their official capacities. Further, Corman has failed to state a plausible claim against Nurse Sheila, since he has not alleged any personal involvement by her prior to the surgery. Additionally, Corman's amended complaint, insofar as it seeks to recover property, should be dismissed since he has not stated a plausible claim that would entitle him to that relief. It is therefore **RECOMMENDED** that:

(1) Corman's claims against the "NDSH Clinical Team" and each of the individual defendants named in their official capacities be **DISMISSED** with prejudice;

(2) Corman's claim against Nurse Sheila be **DISMISSED** without prejudice; and

(3) Corman's amended complaint, insofar as it requests the "recovery of property," be **DISMISSED** without prejudice.

Corman has stated a plausible claim for deliberate indifference to his serious medical needs against Alex Schweitzer, Kerry Wicks, Larry Culp, Travis Bullock, Randy Switters, Randy Perkins, and Dr. Ernster in their personal capacities, and he should be

allowed to proceed with that claim. Lastly, Corman is not entitled to the appointment of counsel. It is therefore **ORDERED** that:

(1) The Clerk amend the caption to include Travis Bullock and Randy Switters as defendants in their personal capacities;

(2) The Clerk effectuate service upon Alex Schweitzer, Kerry Wicks, Larry Culp, Travis Bullock, Randy Switters, Randy Perkins, and Dr. Ernster in their personal capacities; and

(3) Corman's request for appointment of counsel is **DENIED**.

Dated this 29th day of October, 2015.

>*/s/    Alice R. Senechal*
>Alice R. Senechal
>United States Magistrate Judge

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Federal Rule of Civil Procedure 72(a) and (b) and District of North Dakota Civil Local Rule 72.1(D)(2) and (3), plaintiff may object to this Report and Recommendation and Order by filing with the Clerk of Court no later than November 13, 2015, a pleading specifically identifying those portions of the Report and Recommendation and Order to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may result in forfeiture of the right to seek review in the Court of Appeals.